IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MONA JANE TONNOUS,

      Plaintiff,

  v.                                                                  Civil Action 2:17-cv-393
                                                                Judge Michael H. Watson
                                                                Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Mona Jane Tonnous, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her Title II Social Security Disability Benefits and XVI Supplemental Security Income Disability applications. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 13) be **OVERRULED**, and that judgment be entered in favor of Defendant.

### I. BACKGROUND

#### A. Prior Proceedings

Plaintiff filed applications for Title II Social Security Disability Benefits and Title XVI Supplemental Security Disability Benefits on September 17, 2010, alleging disability since October 1, 2005. (*See* Doc. 9-3, Tr. 127–28 PAGEID #: 173–74). Her applications were denied initially, after reconsideration, and by an Administrative Law Judge. (*Id.*, Tr. 189, 191, PAGEID #: 235, 237). By order dated September 2, 2014, the Appeals Council remanded the case for further proceedings. (Doc. 9-3, Tr. 256, PAGEID #: 210).

Following the remand, Administrative Law Judge Kristen King (the "ALJ") convened a video remand hearing on November 19, 2015, at which time Plaintiff amended her alleged onset

date to September 1, 2010. (Doc. 9-2, Tr. 41–76, PAGEID #: 86–121). On March 9, 2016, the ALJ issued an unfavorable decision. (*Id.*, Tr. 15, PAGEID #: 60). Plaintiff again requested review of the administrative decision to the Appeals Council (*id.*, Tr. 7, PAGEID #: 52), which denied her request on March 7, 2017, and adopted the ALJ's decision as the Commissioner's final decision (*id.*, Tr. 1, PAGEID #: 46).

Plaintiff filed this case on May 8, 2017 (Doc. 3), and the Commissioner filed the administrative record on July 11, 2017 (Doc. 9). Plaintiff filed a Statement of Specific Errors (Doc. 13), the Commissioner responded (Doc. 15), and Plaintiff filed a Reply (Doc. 16).

### B. Relevant Medical Background

On May 13, 2015, Plaintiff saw Dr. Stephen Scrimenti, a licensed psychologist, for issues with depression. (Doc. 9-8, Tr. 1079, PAGEID #: 1130). Dr. Scrimenti's treatment notes from that appointment state that Plaintiff was receptive and positively engaged. (*Id.*). At another appointment on June 10, 2015, Dr. Scrimenti stated that Plaintiff was eating and sleeping better and that her "depression ha[d] lifted to a significant degree." (*Id.*, Tr. 1080, PAGEID #: 1131). On September 1, 2015, Dr. Scrimenti again noted that Plaintiff's mood had lifted, and that Plaintiff "appeared well-nourished with a positive appetite, is sleeping well, using medication appropriately, continues to help her mother and father, caretaker for her sickly husband, and parents her child." (*Id.*, Tr. 1081, PAGEID #: 1132). At that time, Plaintiff "denied any current problems with depression or anxiety" and her response to intervention was "positive." (*Id.*). On October 6, 2015, Dr. Scrimenti opined that Plaintiff "continues to experience depression especially in the context of a recent car accident (along with her persistent back pain)" but also that Plaintiff's response to intervention was positive. (*Id.*, Tr. 1083, PAGEID #: 1134).

On November 3, 2015, Dr. Scrimenti completed a Mental Impairment Questionnaire. (*Id.*, Tr. 1086, PAGEID #: 1137). In the Questionnaire, Dr. Scrimenti stated that Plaintiff's prognosis was "poor" and checked the boxes indicating Plaintiff presented with fourteen different symptoms, but offered no explanation or elaboration. (*Id.*, Tr. 1087–88, PAGEID #: 1138–39). In terms of functional limitations, Dr. Scrimenti checked that Plaintiff had marked difficulties in maintaining concentration, persistence, or pace and that Plaintiff had experienced 4 or more episodes of decompensation within the last 12 months. (*Id.*, Tr. 1089, PAGEID #: 1140). Ultimately, Dr. Scrimenti checked the box that said Plaintiff's impairments would require her to be absent from work more than four days per months and that she was incapable of working 8 hours a day, 5 days per week. (*Id.*, Tr. 1090–93, PAGEID #: 1141–44).

### C. Relevant Testimony at the Administrative Hearing

When asked why Plaintiff believed she was unable to work, Plaintiff stated "[m]y back won't allow me, and physically and mentally I'm not able to hold down a job." (Doc. 9-2, Tr. 49, PAGEID #: 94). Plaintiff then explained a typical morning routine: wake up around 6:00 or 7:00 a.m., make coffee and toast for breakfast, sit on the couch with her coffee and "watch a little TV, go "for a little walk," and lay down for a half hour to forty-five minutes around 11:00 a.m. (*Id.*, Tr. 50, PAGEID #: 95). Next, Plaintiff will "[f]ix something for lunch, maybe a sandwich, set the table and eat, and then sit on the couch for a little bit, watch a little TV, wait on [her] [nine-year old] son to get home from school while cooking, trying to get supper ready for him." (*Id.*, Tr. 50–51, PAGEID#: 95–96). Plaintiff explained that, after dinner, she watches TV with her son, helps with his homework, and maybe plays a board game for 10 to 20 minutes before he goes to bed. (*Id.*, Tr. 54, PAGEID #: 99).

In terms of household chores, Plaintiff stated that she and her husband both do the dishes, do the laundry together once a week, and grocery shop together about once a month. (*Id.*, Tr. 51–53, PAGEID #: 96–98). Plaintiff testified that she has no problems interacting with other customers or cashiers at the store. (*Id.*, Tr. 52, PAGEID #: 97). Plaintiff also stated that she sees her parents "[a]bout every day" and travels to their house. (*Id.*, Tr. 65, PAGEID #: 110). Plaintiff later testified, however, that she "just don't like to be around a lot of people. I don't like to talk to a lot of people." (*Id.*, Tr. 64, PAGEID #: 109). Plaintiff also testified that she has panic attacks about once a month. (*Id.*, Tr. 66, PAGEID #: 111).

### D. The ALJ's Decision

The ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, scoliosis, depression, anxiety, and a history of substance abuse. (Doc. 9-2, Tr. 21, PAGEID #: 66). Despite these impairments, the ALJ held that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing. (*Id.*). Specifically, the ALJ noted that with respect to Plaintiff's back impairment, there was no evidence in the record of radiographic findings or consistent neurological pathology that is required under Listing 1.04. (*Id.*). The ALJ also noted the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06. (*Id.*, Tr. 22, PAGEID #: 67).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ stated:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the left upper extremity. She must avoid all use of dangerous machinery and all exposure to unprotected heights. She is limited to simple, routine tasks. She is limited to jobs in which changes occur no more than 20% of the workday, but no transactional interaction, such as sales or negotiations. She

4

> can tolerate only occasional interaction with coworkers and supervisors with no tandem tasks.

(*Id.*, Tr. 23, PAGEID #: 68).

In opining on Plaintiff's RFC, the ALJ declined to give controlling weight to Dr. Scrimenti, and gave the following reasons in support:

> Dr. Scrimenti failed to provide evidentiary support for his extreme limitations. In addition, such limitations are inconsistent with the longitudinal record, including the claimant's own reports of functioning and signs and findings on the claimant's prior consultative psychological evaluation. Of note, Dr. Scrimenti's own treatment notes of record from two visits in November 2015 offer little details beyond reported symptoms and what is described as a "positive" response to interventions (Exhibit 28F). Similarly, his earlier treatment notes do not reflect signs, symptoms, or findings, which support his opinion at 23F (*see* Exhibit 22F). In fact, during a September 2015 visit, the claimant denied any current problems with depression or anxiety (*Id.* at 4) [although continued depression was noted during her next visit in October 2015 in the context of a recent care accident (along with her persistent back pain)]. Also, the claimant's presentation at the hearing is inconsistent with such limitations and reports in her more recent physical treatment records note anxiety and depression, but do not include findings or reports consistent with such limitations. (*See* Exhibits 20F, 26F and 27F).

(*Id.*, Tr. 29, PAGEID #: 74).

Additionally, the ALJ explained that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible[.]" (*Id.*, Tr. 24, PAGEID #: 69). In support, the ALJ discussed that although Plaintiff complained of debilitating back pain, physical examinations and diagnostic tests were largely unremarkable. (*Id.*, Tr. 25–26, PAGEID #: 70–71). Additionally, the ALJ stated that Plaintiff's relatively conservative treatment for her conditions suggest that she remained capable of performing a range of light work. (*Id.*, Tr. 26, PAGEID #: 71). Finally, the

ALJ held that "[o]ther factors belie the claimant's credibility":

> For example, the claimant's allegations about the severity of her physical and mental impairments are inconsistent with her own reports about her activities of daily living. The claimant testified at the hearing she remains capable of caring for her son, preparing meals, performing household chores including washing dishes and doing laundry, and grocery shopping. She also reported being able to use a cell phone, text, use the internet, and maintain a Facebook account. She also testified that she walks to her parents' home on a regular basis, all of which suggest she is not as limited as alleged.
>
> The record also suggests drug-seeking behavior related to her substance issues, which undermines her credibility. For example, the claimant presented to the hospital in October 2011 with complaints that everything hurt, yet physical examination was negative (Exhibit 19F). At that time, the claimant was not prescribed mediation and it was noted she was already overmedicated (*Id.* at 2).
>
> In addition, as noted, the claimant has a history of drug overdose/misuse, including a charge of forgery for having possession of prescription drugs not prescribed to her (Exhibit 6F/2). She also has a history of OMVI, shoplifting, and forgery (Exhibit 24F), which calls her general credibility into question.

(*Id.* Tr. 28, PAGEID #: 73).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## III. DISCUSSION

Plaintiff asserts two assignments of error: (1) that the ALJ failed to properly evaluate Plaintiff's credibility and (2) that the ALJ improperly evaluated and discounted the opinion of Plaintiff's treating physician. (Doc. 13).

### A. Credibility Determination

Plaintiff argues that the ALJ did not properly consider her credibility and thus the decision was not supported by substantial evidence. (*See* Docs. 13, 16). More specifically, Plaintiff avers that "the ALJ inappropriately relied on the lack of objective medical evidence to discount [Plaintiff's] allegations of pain, depression, and anxiety and her significant limitations arising from those symptoms." (Doc. 13 at 16).

At the time of the ALJ's decision, SSR 96-7p, 1996 WL 374186 (July 2, 1996), governed the ALJ's analysis of the credibility of Plaintiff's statements concerning her symptoms. That ruling was later superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which eliminated the use of the term "credibility" in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029 at *1. The new ruling directs the ALJ to consider whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. *Id.*, 2016 WL 1119029 at *7.

Although the Sixth Circuit has declined to determine if SSR 16-3p is retroactive, it has characterized SSR 16-3p as merely eliminating "the use of the word 'credibility' ... to 'clarify

7

that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). The Court finds, however, that under either lens—credibility or consistency—the ALJ's decision was supported by substantial evidence. *See Barncord v. Comm'r of Soc. Sec.*, No. 2:16-cv-389, 2017 WL 2821705, at *10–12. (S.D. Ohio June 30, 2017) (affirming recommendation that the Court need not resolve the retroactivity issue).

In Plaintiff's Reply, she argues:

> some of the ALJ's stated reasons for finding [her] not credible raise the question of whether she engaged in assessing [her] overall character rather than focusing only on the statements about her symptoms and the evidence in the record that was relevant to her impairments. For instance, the ALJ's use of [her] past substance abuse issues, and legal problems arising therefrom, to detract from her credibility, while also noting that those issues were "generally resolved" (Tr. 27–28) has nothing to do with [her] allegations of pain or mental impairments.

(Doc. 16 at 2).

Although Plaintiff is correct that the ALJ relied on facts that were relevant to Plaintiff's character—i.e. her criminal history and past drug use—the ALJ also analyzed the inconsistency of Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms with the objective medical evidence and other evidence of record, as the new regulations require. *See Blake v. Comm'r of Soc. Sec.*, No. 2:15-CV-2625, 2016 WL 4227408, at *10 (S.D. Ohio Aug. 11, 2016) ("The Sixth Circuit has held that 'even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it.") (citing *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013)). Here, substantial evidence supports the ALJ's assessment.

For example, the ALJ found that Plaintiff underwent relatively conservative treatment for her conditions. (Doc. 9-2, Tr. 26, PAGEID #: 71). Indeed, the ALJ noted that Plaintiff had not participated in physical therapy since 2010; she testified that she received epidural steroid injections, albeit not consistently; she never required an assistive device for ambulation; and she never underwent surgical intervention. (*Id.*). *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment); *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.").

Further, the ALJ found that "although Plaintiff complained of debilitating back pain, physical examinations and diagnostic tests of record have remained largely unremarkable." (*Id.*). In support, the ALJ relied on a January 27, 2011, internal medicine examination in which, despite Plaintiff's complaints of constant radiating pain in the neck and back, she was able to ambulate with a normal gait, she did not require an assistive device, straight leg raising in the sitting and supine positions was normal, and dorsolumbar spine revealed relatively normal curvature. (*Id.*, citing Exhibit 7F/1). An April 2011 MRI of the Plaintiff's spine revealed, *inter alia*, only mild bulging at L4-L5 and no nerve root welling or displacement. (*Id.*, citing Exhibit 8F). At a July 2011 evaluation with Dr. Stephen Nutter, Plaintiff again ambulated with a normal gait and was observed to be comfortable in sitting and supine positions. (*Id.*, Tr. 26, PAGEID #: 70 (citing Exhibit 11F/1)).

Finally, the ALJ recognized that "[e]xamination findings have remained generally negative as well." (*Id.*, Tr. 26, PAGEID #: 71). For example, the ALJ noted that treatment

9

records dated August 24, 2015 include complaints by Plaintiff of chronic back pain with associated weakness in the legs. (*Id.* (citing 20F/1)). While examination of the back showed trigger points and tenderness bilaterally in the paraspinal muscles, the exam was otherwise unremarkable and a neurological examination revealed only mild decreased sensation in the right leg and straight leg raising test remained negative. (*Id.* (citing 20F/1)). Moreover, the following month, Plaintiff's musculoskeletal examination appeared completely normal. (*Id.* (citing 21F/16)). And when an ALJ finds contradictions between medical reports and the Plaintiff's complaints, "the ALJ may properly discount the credibility of the claimant." *Hartman v. Colvin*, 954 F. Supp. 2d 618, 636 (W.D. Ky. 2013).

The Sixth Circuit has held that the Court must accord great deference to an ALJ's credibility assessment, particularly because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citations omitted). To that end, it is not the province of the reviewing court to "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In this case, the ALJ set forth the various factors that she considered in her credibility assessment, including specific citations to medical records and medical source opinions, objective clinical findings, treatment regimen, observations at the hearing and activities, and the ALJ's determination has support in the record. (*See* Tr. 28–31, PAGEID #: 62–65). Consequently, the ALJ complied with the regulations, and her decision is supported by substantial evidence.

### B. Treating Physician

Plaintiff next argues that the ALJ erred by failing to give controlling weight to her

treating physician Dr. Scrimenti's opinion and did not adequately explain his decision. (Doc. 13 at 17–19). This, Plaintiff concludes, led to the ALJ finding a "mental RFC [that] appears to be a hybrid which is based on no one mental health opinion of record[.]" (*Id.* at 19).

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Here, the ALJ declined to give controlling weight to Dr. Scrimenti, explaining that he failed to provide evidentiary support for his extreme limitations and his opined limitations were inconsistent with his own treatment notes and Plaintiff's reported activities. (Doc. 9-2, Tr. 29, PAGEID #: 74). Indeed, Dr. Scrimenti noted that Plaintiff's depression was lifting, Plaintiff herself denied depression at one point, and Dr. Scrimenti consistently described Plaintiff as

11

positively responding to intervention. Moreover, Dr. Scrimenti noted Plaintiff's sizable responsibilities, including helping her mother and father, caring for her sick husband, and parenting her young child. This, the ALJ found, suggested that Dr. Scrimenti's Mental Impairment Questionnaire was not consistent with his own treatment notes and Plaintiff's daily activities. Indeed, Plaintiff testified that she was able to cook, clean, grocery shop, interact with her family, and care for her son on a daily basis.

Thus, although Plaintiff may disagree with the ALJ's ultimate conclusion, her decision to reject Dr. Scrimenti's opinion was appropriate because the ALJ found it was not supported by objective evidence and was inconsistent with the other evidence in the record. Further, the ALJ's explanation provided sufficient detail to satisfy the good-reasons requirement and appropriately explained the disposition of the case to Plaintiff. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010). It was therefore not an error for the ALJ to assign Dr. Scrimenti little weight, and the decision to do so does not undermine Plaintiff's RFC. *See id.*

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 11) be **OVERRULED** and that judgment be entered in favor of Defendant.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo*

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.

Date: February 16, 2018  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE